IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

CLARENCE MCNISH,

                    Defendant.

CRIMINAL ACTION
NO. 18-267

**<u>OPINION</u>**

**Slomsky, J.**                                                    **November 22, 2021**

I.   **INTRODUCTION**

<u>Pro</u> <u>se</u> Defendant Clarence McNish ("Defendant"), who is serving a 96-month sentence, moves to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute.  In his Motions[1] (Doc. Nos. 52, 56), Defendant requests either compassionate release or a reduction of sentence.  He argues that the Court should grant these Motions because his underlying health conditions place him at an increased risk of harm from the COVID-19 pandemic, particularly with the spread of its new variants.  (Doc. No. 52 at 4.)  Defendant also contends that he would not pose a danger to the community if released.  (<u>Id.</u> at 6.)

The Government opposes Defendant's Motion, citing (1) the nature of Defendant's underlying offenses, (2) the nature of his medical conditions, (3) his ability to manage his medical conditions while incarcerated, (4) his serving only 48 months of his 96-month sentence[2], (5) the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of

---

[1]   Defendant filed his Motions for Compassionate Release on April 28 and May 26, 2021.

[2]   When the Government filed its Response on June 9, 2021, Defendant had served 42 months on his sentence.  The Court has updated the time served to reflect service as of the date of this Opinion.

COVID-19 in its facilities, and (6) that Defendant declined a Moderna COVID vaccine when offered to him on March 24, 2021.  (Doc. 59 at 4.)  In addition, on November 17, 2021, Defendant filed a Reply (Doc. No. 73) to the Government's Response.   For the reasons that follow, Defendant's Motions (Doc. Nos. 52, 56) will be denied.

## II.      BACKGROUND

### A.      Defendant's Criminal History

Defendant is presently incarcerated for distributing controlled substances and "arming himself in furtherance of that activity despite being a previously convicted felon." (See Doc. No. 59 at 1-2, 18.)  From 2015 to 2017, Defendant sold illegal drugs, including cocaine base, heroin, and fentanyl, to a government informant on five separate occasions.  (See Doc. No. 23 at 1-14.) Each of these transactions occurred within one thousand feet of an elementary school.  (See id.) In November 2017, authorities found Defendant in possession of additional drugs and a loaded handgun, even though, as a convicted felon, he knew that the law prohibited him from possessing firearms.  (See id. at 2.)

As a result, Defendant pled guilty to the following offenses: distribution of controlled substances, possession of controlled substances with intent to distribute, distribution of controlled substances within one thousand feet of an elementary school, possession of controlled substances with intent to distribute within one thousand feet of an elementary school, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon.  (Doc. No. 23 at 1.)  On July 23, 2020, after the parties "stipulated that 96 months of imprisonment was the appropriate disposition of the case," the court accepted Defendant's plea and imposed the recommended sentence.  (Doc. No. 59 at 2.)  Defendant has served approximately 48 months of

his sentence[3] and his anticipated release date is September 2, 2024.  (See id.)  He is serving his sentence at the Allenwood Medium Federal Correctional Institution ("FCI Allenwood") and has committed one disciplinary infraction while incarcerated.  (See id.)

**B.    Defendant's <u>Pro Se</u> Motion for Compassionate Release
         and the Government's Response**

On February 25, 2021, Defendant sent a request for compassionate release and home confinement to the Warden at FCI Allenwood.  (See Doc. Nos. 52 at 2; 59 at 3.)  On March 15, 2021, the Warden denied his request, citing Defendant's age, lack of a terminal medical condition, conviction for a violent crime, and risk of recidivism as factors that render him an unsuitable candidate for the requested remedies.  (Doc. No. 52, Ex. A.)  Thereafter, on April 28, 2021, Defendant filed the instant pro se Motion for Compassionate Release.  (Doc. No. 52.)  Defendant requests that his sentence be modified to time served or, alternatively, that he be released to home confinement for the remainder of his sentence.  (Doc. Nos. 52 at 7; 59 at 3.)  The Government concedes that Defendant satisfied the administrative exhaustion requirement under 18 U.S.C. §3582(c)(1)(A) because more than 30 days passed between the Warden's denial of his request and his filing of this Motion.  (Doc. No. 59 at 3.)

In his Motion, Defendant contends that his hypertension, kidney failure, lack of a spleen, single kidney, and rhabdomyolysis[4] would place him at "great risk of serious illness or death" if he contracted COVID-19.  (Id. at 4.)  He argues that, in light of the COVID-19 pandemic and the spread of its emerging variants, these medical conditions constitute extraordinary and compelling

---

[3]   Defendant has served approximately 48 months of his 96-month sentence and expects to receive approximately 6 months' credit for good conduct.  (See Doc. No. 59 at 2.)

[4]   Rhabdomyolysis is a condition that "involves the release of a protein into the blood, kidneys, and urine," which BOP clinicians suggest may have been triggered by Defendant's commencement of an exercise regimen. (Doc. No. 59 at 3.)

reasons that warrant his release.  (See id. at 2, 4.)  Moreover, Defendant claims that his release is appropriate because he is "not a danger to [the] community."  (Id. at 6.)

On June 9, 2021, the Government filed a Response to Defendant's Motion.  (Doc. No. 59.) In its Response, the Government submits that Defendant's purported medical conditions do not qualify as extraordinary and compelling reasons for his release, particularly when considered in light of his decision to decline vaccination against COVID-19.  (Id. at 1.)  First, the Government argues that Defendant does not suffer from any medical condition that the Centers for Disease Control and Prevention ("CDC") has recognized as a risk factor for severe COVID-19 illness.  (See id. at 14.)  The Government acknowledges that the CDC lists chronic kidney disease as a COVID-19 risk factor, but counters that Defendant does not suffer from this condition because he retains one fully functional kidney.  (See id. at 15.)  According to the Government, possessing one functional kidney is a distinct condition that the CDC does not recognize as a risk factor.  (See id.) Similarly, the Government notes that Defendant's lack of a spleen and rhabdomyolysis have not been identified by the CDC as risk factors for severe COVID-19.  (See id. at 14, 16.)  Furthermore, the Government reiterates that the Court knew about Defendant's medical conditions and the existence of the COVID-19 pandemic during his sentencing.  (See id. at 3.)  The Government does not explicitly address Defendant's claim, however, that he suffers from hypertension, which the CDC recognizes as a risk factor for more severe COVID-19 illness.  (See People with Certain Medical Conditions, CENTERS FOR DISEASE AND CONTROL PREVENTION (Sep. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.)

The Government also presents additional evidence that counsels against granting Defendant's request for compassionate release.  Most notably, the Government emphasizes that

Defendant declined the Moderna COVID vaccine when prison officials offered it to him on March 24, 2021.  (See Doc. No. 59 at 4.)  Numerous courts have found that, in the absence of a legitimate medical justification for doing so, an inmate's decision to decline COVID-19 vaccination "weighs against a finding of extraordinary and compelling circumstances." United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) (citing over a dozen cases to support this proposition). See, e.g., United States v. Greenlaw, No. 18-cr-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (concluding that "the risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release.")  Recently, another court in this District has recognized that refusing COVID-19 vaccination can be "fatal" to a motion for compassionate release because courts must avoid creating "perverse incentives" that encourage "medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk." United States v. Ortiz, No. 5:18-cr-00264, 2021 WL 1422816, at *3, *5 n.6) (E.D. Pa. Apr. 15, 2021) (Leeson, J.)  Furthermore, the Government points to the fact that Defendant previously contracted COVID-19, remained asymptomatic, and fully recovered without serious consequences to his health as evidence that he is less likely to suffer severe consequences from potential reinfection.  (See Doc. No. 59 at 3, 17.)  Finally, the Government asserts that the § 3553(a) sentencing factors do not justify Defendant's compassionate release.  (See id. at 17-21.)

Defendant filed a series of Replies to the Government's Response reiterating the severity of his medical conditions.  (Doc. Nos. 66; 69; 71.)  In his initial Reply on June 29, 2021, Defendant further describes his medical issues, reasserting that he suffers from kidney failure and expressing concerns about the spread of COVID-19's Delta variant.  (See Doc. No. 66 at 1-2.)  Defendant also attaches to this Reply, as Exhibit B, his medical records from the U.S. Medical Center for Federal

Prisons as evidence of his purported conditions. (See id., Ex. B.)  Finally, in a document dated August 19, 2021, Defendant introduces a new claim that he suffers from left ventricular hypertrophy[5] and asserts that this diagnosis "warrants further extraordinary [and] compelling relief." (Doc. 71 at 1.)  This argument did not appear in any of Defendant's earlier filings, so it was not addressed by the Government.

## III.   DISCUSSION

### A.   The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[6]  See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

---

[5]   Left ventricular hypertrophy is a condition in which the "heart's left pumping chamber . . . has thickened and may not be pumping efficiently." (What Is Left Ventricular Hypertrophy (LVH)?, AMERICAN HEART ASSOCIATION (Nov. 17, 2021), https://www.heart.org/en/health-topics/heart-valve-problems-and-disease/heart-valve-problems-and-causes/what-is-left-ventricular-hypertrophy-lvh.)

[6]   A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See § 3582(c)(1)(A).

> [M]ay reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in [§ 3553(a)]
> to the extent that they are applicable, if it finds that—
>
> > (i)  extraordinary and compelling reasons warrant such a
> > reduction; . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling

reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to

constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress

delegated the authority to define "extraordinary and compelling reasons" to the United States

Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence

reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . .
> that—
>
> > (1)  (A)  Extraordinary and compelling reasons warrant the
> > reduction; . . .
> >
> > (2)  the defendant is not a danger to the safety or any other
> > person or to the community, as provided in 18 U.S.C. §
> > 3142(g); and
> >
> > (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

Here, Defendant has met the exhaustion requirement before filing his Motion.  On February 25, 2021, he sent a request for compassionate release to the Warden at FCI Allenwood.  (See Doc. Nos. 52 at 2; 59 at 3.)  On March 15, 2021, the Warden denied Defendant's request.  (See Doc. No. 52 at Ex. A.)  On April 28, 2021, over thirty days after Defendant sent his initial request, he filed the instant Motion for Compassionate Release.  (Doc. No. 52.)  Because the Warden at FCI Allenwood received and denied Defendant's request and over 30 days passed between Defendant's request and his filing of the instant Motion, he has met the exhaustion requirement.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13, n.1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  Medical Condition of the Defendant
>
>> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii)  The defendant is—
>>
>>> (I)    suffering from a serious physical or mental condition,
>>>
>>> (II)   suffering from a serious functional or cognitive impairment, or
>>>
>>> (III)  experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)  Age of the Defendant. The defendant
>
>> (i)    is at least 65 years old;
>>
>> (ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and
>>
>> (iii)  has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C)  Family circumstances.

       (i)         The death or incapacitation of the caregiver of the defendant's minor child or minor children.

       (ii)        The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[7]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility

---

[7]    Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated."  Somerville, 463 F. Supp. 3d at 596.  Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."  Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction.  (See id. at 588) ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a).").  Section 3553(a) establishes factors for a court to consider in initially imposing a sentence.  Not every factor is applicable, however, when considering a motion for compassionate release.  In the instant case, the applicable factors are:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with the Sentencing Commission's applicable policy statements, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

**B.      Defendant's Motion for Compassionate Release Will Be Denied**

Defendant's Motion will be denied because he has not shown an extraordinary and compelling reason for his release.  Furthermore, the relevant § 3553(a) factors weigh against granting Defendant's Motion for compassionate release.[8]

**1.      Defendant's Medical Conditions Do Not Present an Extraordinary and Compelling Reason for His Release**

Defendant contends that he has shown an extraordinary and compelling reason for his release because his hypertension, lack of a spleen, kidney failure, single kidney, and rhabdomyolysis make him "seriously vulnerable to profound infection from COVID-19 and [v]ariant." (Doc. No. 52 at 6.)  The Government submits that Defendant's medical conditions do not establish the particularized vulnerability to COVID-19 and its effects needed to constitute an

---

[8]  Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

extraordinary and compelling reason for his release.[9]  (See Doc. No. 59 at 14-17.)  Specifically, the Government notes that the CDC does not recognize Defendant's conditions as risk factors for severe COVID-19 illness.  (See id. at 14.)

Here, there is insufficient evidence to conclude that Defendant's medical conditions represent an extraordinary and compelling reason for his release.  First, assuming Defendant suffers from hypertension, there is insufficient evidence to conclude that this condition puts him at a heightened risk of COVID-19 illness.  Although the Government does not explicitly address this element of Defendant's claim, it notes that the CDC previously classified hypertension as a condition that "might" entail a greater risk of severe illness, which distinguished it from conditions that definitely would entail a greater risk.  (See Doc. 59 at 13 n.4.)  Although the CDC has recently consolidated these two lists of conditions, the CDC has described the empirical evidence about whether hypertension increases COVID-19 risk as "mixed." (Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers, CENTERS FOR DISEASE AND CONTROL PREVENTION, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.)

Similarly, district courts have routinely denied motions for compassionate release based on conditions like hypertension that are merely potential COVID-19 risk factors.  See, e.g., United States v. Yanney, No. 15-298, 2020 WL 3619077, at *5 (M.D. Pa. July 2, 2020) (finding

---

[9]  Additionally, there is an actual, non-speculative risk of contracting COVID-19 at FCI Allenwood Medium.  As of the date of the filing of this Opinion, there is one active case of COVID-19 at FCI Allenwood, but 450 inmates and 54 staff members have previously contracted and recovered from the illness.  See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Nov. 12, 2021), https://www.bop.gov/coronavirus.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." Id. (emphasis omitted).  The Court notes, however, that the BOP has implemented precautions to contain the virus's spread by offering vaccinations to inmates and quarantining those infected with the virus.  (See Doc. No. 59 at 4-7.)

defendant's adequately managed hypertension insufficient to qualify as an extraordinary and compelling reason for compassionate release); United States v. Falci, No. 17-228, 2020 WL 3410914, at *4 (D.N.J. June 22, 2020) (denying compassionate release where the defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor."); United States v. Whiteman, No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (Pappert, J.) (finding that mild obesity and hypertension fall short of extraordinary and compelling reasons for release.)

Furthermore, there is no evidence suggesting that Defendant's lack of a spleen increases his vulnerability to the effects of COVID-19.  (Doc. No. 59 at 14-15.)  The CDC has not identified this as a COVID-19 risk factor and Defendant does not appear to suffer any symptoms from this condition.  (See id. at 14.)  Moreover, other courts have denied motions for compassionate release by inmates who claimed that their lack of a spleen heightened their risk of COVID-19 complications.  See, e.g. United States v. Mantack, 833 F. App'x 819 (11th Cir. 2021) (not precedential) (affirming the district court's denial of a motion to reduce sentence by a 28-year-old with a removed spleen); United States v. Frazier, No. 16-355, 2020 WL 6747979, at *1-3. (E.D. Pa. Nov. 17, 2020) (Kearney, J.) (denying motion for compassionate release by a 32-year-old inmate who underwent removal of his spleen and a portion of his lung).

Although chronic kidney disease represents a risk factor under CDC guidance, the Government asserts that Defendant does not suffer from this condition because he retains one fully functional kidney and medical records indicate that he has not "suffered any impairment from not having two." (Doc. No. 59 at 15.)  The Government notes that other courts have rejected claims that having one kidney constitutes an extraordinary and compelling reason for release.  See, e.g.,

United States v. Cruz, No. 17-167, 2020 WL 5627448, at *2 (N.D. Ind. Sept. 21, 2020) (clarifying that "having only one kidney is not the same as having chronic kidney disease . . .")

Similarly, the CDC does not recognize rhabdomyolysis as a risk factor for more severe COVID-19 illness.  See United States v. Walker, No. 4:04-CR-00035-05-BRW, 2020 WL 4677652, at *1 (E.D. Ark. Aug. 12, 2020) (noting that rhabdomyolysis is not a risk factor for more intense COVID-19 symptoms.)  Furthermore, Defendant has fully recovered from his rhabdomyolysis and does not suffer any lasting effects from the illness.

Finally, in his Reply brief, Defendant introduces a new argument that he faces a higher risk of severe COVID-19 illness because he suffers from a heart condition known as left ventricular hypertrophy.  (See Doc. No. 71 at 1.)  The Court will not address this claim because Defendant did not raise it in a timely manner, failing to mention it prior to his supplemental Reply brief.  See Oberwager v. McKechnie Ltd., 351 F. App'x 708, 711 n.5 (3d Cir. 2009) (stating that it is "inappropriate to raise an argument for the first time in a Reply brief"); Laborers' Intern. Union of North America, AFL-CIO, 26 F.3d 375, 398 (3d Cir. 1994) (finding that "an issue is waived unless a party raises it in its opening brief . . .")  In any event, the CDC does not list left ventricular hypertrophy as a risk factor.

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) sentencing factors also counsel against Defendant's release at this time.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1).  Here, on at least five separate occasions, Defendant distributed illegal drugs to a confidential informant.  (See Doc. No. 23 at 1.)  Furthermore, Defendant engaged in this conduct in a school zone and armed himself with a loaded pistol in furtherance of this activity, presenting a danger to the community. (See Doc. No. 59 at 18.)

Defendant also has a preexisting criminal record with prior convictions for felony drug crimes, misdemeanor drug possession, contempt of court, and disorderly conduct.  (Id.)

Second, the Court has also considered whether Defendant's release would reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  See § 3553(a)(2)(A)-(C).  Here, it would not.  Defendant has served 48 months in prison, which is half of his 96-month sentence.  (See Doc. No. 59 at 18.)  The magnitude of Defendant's crimes warrant the sentence he received.[10] Despite Defendant's contentions that his release would not endanger the public, the Government believes that "[D]efendant continues to present a danger to the community," given the nature of his offenses.  (Id. at 18-19.)  Moreover, Defendant suffered from many of the same conditions that he presents now, including a missing spleen and single kidney, when he engaged in the drug offenses that culminated in his present sentence.  (See id.)  Defendant's release at this stage of his sentence would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.  See United States v. Wragg, No. 15-398, 2020 WL 4015204, at *8 (E.D. Pa. July 16, 2020) (Slomsky, J.) (finding that the § 3553(a) factors weighed against granting compassionate

---

[10]  In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

release to a defendant because of the severity of his offenses, history of recidivism, and amount of time remaining in his sentence), aff'd, Nos. 20-3430 and 21-1544, 2021 WL 4459455 (3rd Cir. Sept. 22, 2021) (not precedential) (affirming the district court's consideration and weighing of these factors to deny the defendant's motion for compassionate release).

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant. See § 3553(a)(6). Here, a reduction in Defendant's sentence would not achieve the goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Defendant agreed to his 96-month sentence, so comparing him to other defendants who did not have a sentencing agreement with the Government would not be a correct comparison for purposes of a § 3553(a)(6) analysis. For all these reasons, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction. Consequently, Defendant's Motions will be denied.

## IV.      CONCLUSION

For the foregoing reasons, Defendant's Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. Nos. 52, 56) will be denied. An appropriate Order follows.